United States District Court
Southern District of Texas
**ENTERED**
March 03, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL CANTU, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:15-CV-71 |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil rights action brought by Michael Cantu, formerly employed as a deputy city marshal, against his employer the City of Corpus Christi. 42 U.S.C. § 1983. Cantu alleges the City unlawfully terminated his employment in retaliation for his speech against unlawful practices in the City Municipal Court. *Connick v. Myers*, 461 U.S. 138, 147 (1983).

The City answered Cantu's Second Amended Complaint and filed a motion to dismiss. Fed. R. Civ. P. 12(b)(6). The City argues that Cantu failed to adequately plead first amendment retaliation, causation or municipal liability for his termination. The City also filed a motion to strike portions of the Complaint. Fed. R. Civ. P. 12(f).

### I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### II. CANTU'S ALLEGATIONS

Cantu was a deputy city marshal in the City Municipal Court in 2013. He alleged that he engaged in several kinds of protected speech that resulted in the termination of his employment. The Court considers the different categories of his speech separately. *See*

*Davis v. McKinney*, 518 F.3d 304, 314 (5th Cir. 2008) (consider each communication based upon topics and recipients).

### A. Allegations of Retaliation for Civil Service Hearing Testimony

Cantu was subpoenaed to testify at a Civil Service Board hearing on August 22, 2013, regarding the termination of another deputy city marshal, Patrick Gonzales. Before the hearing, Interim City Marshal De La Garza allegedly approached Cantu and asked him to testify that Gonzales had a "ghost" cell phone. Cantu declined and told De La Garza that he had no knowledge that Gonzales had such a phone. Cantu testified at the hearing, but not as sought by De La Garza. D.E. 16, ¶ 9. Allegedly upset the afternoon of the hearing, De La Garza remarked to several deputy marshals, including Cantu, that "he couldn't believe some people would lie under oath." The next morning, De La Garza stated that the Civil Service hearing was on local television and things "were going to get ugly."

The day after his testimony, Cantu advised Director Yasmin Chapman, Human Resources, by memo that he was concerned that De La Garza would retaliate against Cantu for his truthful testimony. Cantu copied Kimberly Jozwiak, the Director of Municipal Court, on the memo. D.E. 16-1. Two weeks later on September 6, 2013, Jozwiak suspended Cantu for two days without pay based upon incidents of tardiness, absenteeism and taking leave without authorization.[1]

---

[1] According to the letter of reprimand, Cantu was suspended for two days without pay in part because he clocked out early or clocked in late on 12 days for a total of 48 minutes. In addition he did not clock in at all for three days and failed to clock out one day. Cantu was absent from work without prior authorization three days in August 2013.

**B. Retaliation for Complaints Regarding Operations of Municipal Court to City Management**

On August 29, 2013, Cantu complained to Director Chapman by memo alleging that the judicial division used the city marshals in ways that violated City policies and the rights of defendants. *Id.*, ¶ 10; D.E. 16-2.[2] On September 6, 2013, Jozwiak issued a written reprimand to Cantu based upon tardiness, absenteeism, and taking leave without advance authorization. *Id.*, ¶ 11.

On September 11, 2013, Cantu sent a memo addressed "To Whom it May Concern" to City Manager Ron Olson, Assistant City Manager Margie Rose, Jozwiak, and Director Chapman. Cantu advised them that De La Garza allegedly allowed a marshal trainee, Roland Arias, to carry a City issued firearm, to serve warrants, and to make arrests even though he had not yet qualified as a certified peace officer in violation of City policies and state law. D.E. 16, ¶ 12, 16-4.

In September 2013, Cantu also reported De La Garza's violation of policy regarding the trainee marshal Arias to Corpus Christi Police Chief Floyd Simpson and Assistant Chief Mike Markle. D.E. 16, ¶ 12. Cantu made an open records request on February 17, 2014, to the City for copies of the investigation into his complaints regarding De La Garza and Arias. Three days later, Cantu received a Letter of Contemplated Disciplinary

---

[2] Cantu alleged that City marshals are required to demand payment from municipal court defendants who have warrants pending, threaten defendants with jail, and refuse them permission to see a judge. He alleged some defendants are handcuffed, placed into windowless holding rooms for up to six hours with no food or water, and no cameras monitor those defendants. The Presiding Judge asked marshals how much money they collected and why it is not more. Cantu alleged that the policy and practice of the Judicial and Administration divisions at Municipal Court was to focus on extracting money from defendants, even if it meant violating defendants' rights. D.E. 16-2. Cantu also alleged that deputy marshals accept pleas, fill out plea forms, and turn the plea forms into the clerk without the defendants seeing a judge in open court.

Action from Jozwiak that resulted in Cantu's suspension for two days without pay for his failure to supervise and his failure to provide plea forms to trainee Arias on February 10, 2014. *Id*., ¶ 14.

Cantu again notified City Manager Olson by email on March 20, 2014, that Jozwiak retaliated against him because of the investigation into De La Garza's handling of the trainee marshals. D.E. 16-9. Cantu further alleged that De La Garza told Cantu that Jozwiak, Assistant City Manager Rose, and City Manager Olson were trying to get Cantu's employment terminated. *Id*.

 On May 7, 2014, Cantu notified Director Chapman by memo of a series of events that he claimed resulted in retaliation against him. D.E. 16-10. On May 27, 2014, Jozwiak issued a Contemplated Disciplinary Action as to Cantu based upon: 1) requests for vacation leave that were later supplanted by sick leave requests for the same dates after the original requests were denied, 2) excessive tardiness or absences, 3) absences from duty without leave or advance notification, and 4) his prior disciplinary history in 2012, 2013, and 2014. Jozwiak fired Cantu three days later. D.E. 16-11, 16-12.

### C. Retaliation for Complaints Regarding De La Garza's use of Trainee Marshals to the Nueces County Constable

Cantu alleges that in February 2014 he told Steven Rosas, Chief Deputy of Nueces County Constable Precinct 1, that De La Garza permitted Reynaldo Zarate, a marshal trainee, to perform off-duty police work for the Regional Transit Authority (RTA) even though Zarate was not a licensed peace officer. *Id*., ¶ 15. Cantu advised City Manager Olson by memo on March 6, 2014, that the Corpus Christi Police Department began an

investigation (that Cantu alleges he assisted) into De La Garza and Zarate's activities.[3] In the same memo, Cantu told Olson that Jozwiak retaliated against him by suspending his outside employment. D.E. 16-8.

### III.   STANDARD OF REVIEW MOTION TO DISMISS

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] Fed. R. Civ. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require detailed factual allegations," it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal quotations omitted)). "'A formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In Re Katrina Canal Breeches Litig*., 495 F.3d 191, 205 (5th Cir. 2007). This Court therefore must accept Cantu's factual allegations as true for purposes of this motion. To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[3] Cantu alleged he "assisted" in the investigation, but in exhibit D.E. 16-8, he states that "I was a witness to the investigation. I was interviewed by the Criminal Investigation division . . . ." *Compare* D.E. 16, § 15 *with* D.E. 16-8.

[4] The Second Amended Complaint is neither short nor plain. It is 17 pages long with 21 pages of exhibits. Plaintiff's counsel filed similar complaints in other cases.

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference. . . . " *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *United States ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 377 (5th Cir. 2004); *Myers v. Textron, Inc*., 540 Fed. App'x. 408, 409 (5th Cir. Oct. 2, 2013) (per curiam) (unpublished). When an exhibit to the complaint contradicts the complaint, the exhibit not the allegation controls. *St. Luke's Episcopal Hosp*., 355 F.3d at 377; *Rogers v. City of Yoakum*, 660 Fed. App'x. 279, 285 (5th Cir. Aug. 30, 2016) (per curiam) (unpublished).

If the complaint lacks an allegation regarding a necessary element, dismissal is appropriate. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420 (5th Cir. 2006) (citing 2A Moore's Federal Practice ¶ 12.07 [2.-5] at 12-91). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

## IV.   ANALYSIS OF MOTION TO DISMISS

### A. Standard for First Amendment Claim

The First Amendment protects a public employee's right to speak as a citizen on matters of public concern, with some limitations. *Connick*, 461 U.S. at 147; *Anderson v. Valdez*, 845 F.3d 580, 592-93 (5th Cir. 2016); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 691 (5th Cir. 2007).

The threshold inquiry in any § 1983 First Amendment case is "whether the plaintiff was speaking as a citizen . . . or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). If a public employee speaks out as part of his job duties, execution of them, or the advancement of them, the First Amendment affords him no protection. The First Amendment protects only speech made as a citizen. *Id*. Whether the plaintiff speaks as an employee or citizen is a question of law for the Court to determine. *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015) (citing *Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008)). The "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).

**B. Subpoenaed Testimony--Citizen Speech Or Employee Speech**

No person should fear that he will lose his job because of truthful compelled testimony in a judicial or administrative proceeding. *See e.g. Lane*, 134 S.Ct. at 2378. Cantu alleged he was subpoenaed to give testimony at a Civil Service hearing on the termination of a fellow deputy city marshal and that such testimony was not part of his duties. The City argued that Cantu's speech was pursuant to his official duties, but failed to address the issues raised in *Lane*, 134 S.Ct. at 2378.

"Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment." *Id*. "When an employee testifies before an official government

adjudicatory or fact-finding body he speaks in a context that is inherently of public concern." *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989).[5] The Court finds that Cantu has sufficiently alleged that his subpoenaed testimony protects him from termination.

### C. Complaints About Municipal Court—Citizen Speech Or Employee Speech

As detailed in Part II(C), *supra.*, Cantu made numerous written complaints by email, letter and memo to City management personnel including Director Chapman, Assistant City Manager Rose, City Manager Olson, and the Chief and an Assistant Chief of Police regarding the management of Municipal Court and management of the City marshals. Many of the written complaints are exhibits to Cantu's Second Amended Complaint.

#### 1. *Speech to City officials*

Each of Cantu's written complaints to City officials identifies Cantu as a deputy city marshal. His complaints began on August 23, 2013, and continued on a regular basis until May 7, 2014. His complaints were based upon information he acquired in the course and scope of his duties that would not generally be available to private citizens.

Jozwiak terminated Cantu on May 30, 2014. The stated reasons for Cantu's termination were his request for sick leave (which according to Jozwiak appeared to be medically unfounded) for dates for which he had been denied vacation leave and for his disciplinary history.

---

[5] Johnston testified in an EEO hearing for another employee. His supervisor retaliated by seeking to demote him. When Johnston refused to accept a demotion, he was fired. *Id.* at 1568; *see also Reeves v. Claiborne Cty. Bd. of Educ.*, 828 F.2d 1096, 1100 (5th Cir. 1987) (holding that testimony in civil proceedings is protected speech); *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir. 1982) ("the first amendment protects the right to testify truthfully at trial.").

To decide whether Cantu's speech is employee speech or citizen speech, this Court must examine whether the employee's job responsibilities ordinarily require him to engage in the speech in question, whether the speech is the kind of activity engaged in by citizens who do not work for the government, whether the employee voiced a grievance up the chain of command, or whether the concerns voiced were made outside of the chain of command. *See Hardesty v. Cochran*, 621 Fed. App'x. 771, 776-77 (5th Cir. July 14, 2015) (listing factors). Pleadings must be examined for the same considerations, but with less scrutiny.

Recent cases address these issues. In *Gibson v. Kilpatrick*, 773 F.3d 661, 671 (5th Cir. 2014), the police chief's complaint made to outside agencies that the mayor misused a city gasoline credit card was held to be part of Gibson's ordinary duties and was not protected speech. The court held that part of the police chief's ordinary duties included working with outside law enforcement agencies. *See also Rogers v. City of Yoakum*, 660 Fed. App'x. 279, 283 (5th Cir. Aug. 30, 2016) (per curiam) (unpublished) (police chief's report to Texas Rangers of misconduct by City Attorney held to be part of his duties and not protected speech); *Wilson v. Tegre*, 787 F.3d 322, 325 (5th Cir. 2015) (deputy's report of potential criminal activity up the chain of command and to district attorney was not protected by the First Amendment where the deputy was required to report any action that he believed violated the law as part of his official duty); *Hurst v. Lee Cty, Miss.*, 764 F.3d 480, 485 (5th Cir. 2014) (police officer who was authorized to speak to the media, violated department policy in a media contact, but his communications were held to be

part of his ordinary duties and not protected); *but see Anderson*, 845 F.3d at 598; *Howell v. Town of Ball*, 827 F.3d 515, 524 (5th Cir. 2016).

In *Anderson*, the Fifth Circuit held that a staff attorney for an appeals court had adequately alleged that his report of a superior's alleged misconduct to the State Commission on Judicial Conduct was not ordinarily within the scope of his duties and was thus protected speech. 845 F.3d at 598-99. The attorney worked for a single justice at the court. He complained of the conduct of a different justice to the independent state agency that investigated all complaints of judicial misconduct. Furthermore, the misconduct at issue involved the justice's alleged reimbursement from both the court and his campaign of the same travel expenses.

In *Howell*, a police officer performed undercover work for the FBI to assist the FBI in uncovering fraud by the mayor and other City officials in a federal program. The court held that his work with the FBI was not part of his ordinary duties and his speech regarding the mayor's malfeasance was protected by the First Amendment. *Howell*, 827 F.3d at 524.

Cantu's speech was directed primarily to City management within Municipal Court or above, such as to Human Resources and the City Manager. Cantu also allegedly reported his concerns over De La Garza's use of trainee marshals to the Corpus Christi Police Chief and other senior police officers, although he does not state the form, content or context of that report.

Cantu complained by internal email and memo regarding 1) the use of city marshals by the judicial division of Municipal Court, 2) his dissatisfaction with operations, lunch

hours, off-duty employment, micromanagement, and 3) policy and legal violations by De La Garza relating to trainee marshals. All of Cantu's complaints identify him as a deputy city marshal. Cantu provided no factual allegations related to his ordinary duties, but he alleged he had no duty to supervise other marshal employees and that he had no duty to report training violations to the Corpus Christi Police Department or to the Nueces County Constable.

Cantu's complaints regarding working conditions are typical of employee speech and not typical of citizen speech to City Hall. "When an employee merely voices a grievance up the chain of command at his workplace, it is particularly likely that the employee is speaking pursuant to his official duties." *Hardesty*, 621 Fed, App'x. at 776-77; *see also Tucker v. Parish*, 582 Fed. App'x. 363, (5th Cir. Sept. 16, 2014) (per curiam) (unpublished) (report by probation officer to his superiors of internal wrong-doing was employee speech and not protected); *Davis*, 518 F.3d at 313.[6]

The form, content and context of Cantu's communications to City personnel fall within the ambit of recent cases regarding employee speech. The Court finds that Cantu has failed to plead facts that could lead the Court to plausibly conclude that his speech to City managers and to the City police department was protected citizen speech on matters of public concern. *Garcetti*, 547 U.S. at 421.

---

[6] An auditor for state university reported finding child pornography on university computers. Her reports to the FBI regarding the child pornography were citizen speech and protected by the First Amendment. Her complaints to the university president and her immediate superior that the university conducted an inadequate investigation of the child pornography were not protected speech. Davis' complaints of excessive number of university vice presidents and the amount of their pay was protected speech because it was clearly outside the scope of her duties. *Id*. at 314-16.

2. *Speech to Steven Rosas*

Cantu's alleged speech to Steven Rosas, the Chief Deputy of the Nueces County Constable Precinct One is considered separately. Cantu alleged that he reported the marshal trainee issue to Rosas, The pleading reads as follows:

> In February 2014, **Plaintiff** reported to Chief Deputy Steven Rosas, Nueces County Constable-Precinct 1, that City Marshal Michael De La Garza was allowing Reynaldo Zarate to perform police work at an off-duty Regional transit Authority bus stop, although Zarate was not licensed by the Texas Commission on Law Enforcement Office Standards and Education. **Plaintiff's** report was on a matter of public concern and it was not a part of Plaintiff's job duties to make that report.

D.E. 16, ¶ 15. However, Rosas was also the Regional Transit Authority's security coordinator. D.E. 16-10. Thus it appears from the context (buried in Exhibit 16-10) that Cantu made the report to Rosas in Rosas' capacity as RTA's security coordinator and not in his capacity as the Chief Deputy for Precinct One. Moreover, Cantu's pleadings and exhibits reveal that Cantu also performed off-duty work for the RTA and was unhappy when that work was disallowed. *See* D.E. 16, ¶ 18, D.E. 16-10. A full reading of Cantu's exhibit reveals that his report to Rosas was employee speech made in furtherance of Cantu's City employment and his personal interest in off-duty employment.

Cantu's pleadings provide no facts regarding the circumstances or form of his report to Rosas. The Court finds that Cantu's allegations are insufficient to support a plausible inference that Cantu's report to Rosas was citizen speech on a matter of public concern.

**D. Causal Connection Between Subpoenaed Testimony And Termination**

The City challenged the sufficiency of Cantu's pleading of causal connection between his complaints and his termination. The City's challenge is not clear whether it is limited

to Cantu's whistleblower claim or extends to his First Amendment claim. The Court addresses only causation for the First Amendment violation.

To establish causation, a plaintiff must demonstrate that the decision-maker knew of the protected actions and that the protected activity was a substantial or motivating factor for the decision. *Clark v. Cty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (temporal proximity alone may be sufficient if very close in time); *McLaurin v. City of Jackson Fire Dep't.*, 217 Fed. App'x. 287, 288 (5th Cir. Dec. 19, 2006) (per curiam) (unpublished). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis omitted).

By copying Jozwiak on a memo to Director Chapman, Cantu informed Jozwiak that he testified at the Civil Service hearing and was concerned about retaliation on August 23, 2013.[7] This Court found that Cantu sufficiently alleged that his subpoenaed testimony qualified as protected speech. That same memo alleged that De La Garza saw the hearing testimony on local television. The Court may plausibly infer that Jozwiak also saw the hearing on television and learned the content of Cantu's testimony.

Cantu pleaded a series of events, including two suspensions without pay, between his testimony on August 22, 2013, and his employment termination nine months later on

---

[7] Cantu's letter to Director Chapman, on which Jozwiak was copied, outlined De La Garza's comments before and after the hearing. Cantu requested an HR investigation and temporary transfer.

May 30, 3014. One of those suspensions occurred two weeks after Cantu's testimony. [8] Cantu also engaged in a number of other activities that may have resulted in his termination. Because the Court considers only the sufficiency of the pleadings at this time, the Court finds that Cantu has alleged a series of events that may plausibly connect his speech and his termination.

### E.  Municipal Liability

Plaintiff alleged that his employment was terminated by Jozwiak as part of a custom or practice of the City. The City challenged Cantu's pleading of municipal liability as insufficient. If Cantu failed to sufficiently allege municipal liability this Court should dismiss his suit.

### 1.  *.Standard for municipal liability*

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id. Monell* teaches that municipal liability under § 1983 requires proof of three elements: 1) a policymaker;[9] 2) an official policy;[10] and 3) a violation of

---

[8] Cantu was suspended for two days without pay and reprimanded for tardiness and absenteeism on September 6, 2013. On February 21, 2014, Cantu was reprimanded and suspended for two days for his failure to supervise a marshal trainee.

[9] A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). The policymaker "must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Zarnow v. City of Wichita Falls, Tex*, 614 F.3d 161,167 (5th Cir. 2010) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

constitutional rights whose 'moving force' is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. 658).

The identity of the final policymaker is a question of state and local law. *See Jett v. Dallas Indep. Sch. Dist. (Jett I)*, 491 U.S. 701, 737 (1989); *Pembaur*, 475 U.S. at 483. The court must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the constitutional or statutory violation at issue. *Jett v. Dallas Indep. Sch. Dist.* (*Jett II*), 7 F.3d 1241, 1244 (5th Cir. 1993).

The City of Corpus Christi Charter designates the City Council as the final policy-making body for the City, "[A]ll powers of the city shall be vested in an elective council, hereinafter referred to as the 'the council,' which shall enact local legislation, *determine policies*, appoint the city manager, and which council and city manager shall execute the laws and administer the government of the city." Art. 1, § 3 (emphasis added).[11]

A plaintiff may prove the existence of a "custom or policy" in one of two ways: 1) "a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees," or 2) "it may be shown that a final policymaker took a single unconstitutional action." *Zarnow*, 614 F.3d at 169. A custom or policy consists of actions that have occurred for so long and with such frequency that the course of conduct

---

[10] A municipal policy must be a deliberate and conscious choice by a municipal policy-maker. *City of Canton v. Harris*, 489 U.S. 378, 389(1989); *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality).

[11] http://www.cctexas.com/government/city-secretary/city-charter/index. "This charter shall be deemed a public act, may be read in evidence without pleading or proof, and judicial notice shall be taken thereof in all courts and places." *Id*., Art. X, § 14.

demonstrates the governing body's knowledge and acceptance of the disputed conduct. *Id.* (citing *Webster*, 735 F.2d at 842).

A pattern of conduct requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851-52 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). In addition, a pattern may be demonstrated by sufficiently numerous prior incidents, but isolated instances are inadequate to prove knowledge and acquiescence by policymakers. *Garrett v. City of Houston*, 102 Fed. App'x. 863, 865 (5th Cir. June 28, 2004) (per curiam) (unpublished); *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

### 2. *Cantu's pleading regarding municipal custom*

Cantu does not allege that Jozwiak is a policymaker. He instead alleged that "The policy, practice, procedure and custom of the City was identified and pursued through Director Jozwiak, Judge Flores, and City Manager Olson in terminating Plaintiff's employment . . . ." D.E. 16, § 21. Cantu alleged that Municipal Court employees are fired for refusing to violate the law, refusing to provide false testimony, and the City has a custom of retaliating against employees for their protected speech. *Id.*, ¶ 25. He further alleged that it was the City's policy, practice, procedure and custom to "jointly fil[e] false charges and mak[e] false criminal allegations against Municipal Court employees to deprive said employees of their liberty and/or property interest in their employment." *Id.*

Cantu lists seven lawsuits filed against the City by municipal court employees between 2012 and 2015 as evidence of custom or unofficial policy. *Id.*, ¶ 22.[12] He also identified resignations and terminations that add 17 others. Cantu's listed terminations and resignations include no significant information from which this Court can determine any similarity to the lawsuits or to Cantu's allegations.

On summary judgment in *Peterson*, 588 F.3d at 851-52, the court held that 27 incidents of alleged excessive force over a three year period was insufficient to raise a fact issue on the existence of an unofficial policy of tolerating excessive force by Fort Worth police officers. The court held that without a statistical analysis that related the number of complaints to the number of officers, the number of arrests, and the incidents of crime, the number of complaints alone was insufficient. Under the *Peterson* standard, Cantu has not provided any context for his claims that the seven lawsuits represent a pattern of unconstitutional conduct.

Cantu has not sufficiently alleged facts to show an unofficial policy of retaliating against City employees for engaging in protected speech that is a '"persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 169. As a result, even though Cantu's pleading of a First Amendment violation for his subpoenaed speech is sufficient, he has not alleged a basis for municipal liability. *See Van Eschen v. League*

---

[12] Of the seven suits listed by Cantu, only one has gone to a jury and there was no finding regarding policy-maker. Several cases have settled and some remain pending. Nothing in the litigation Cantu cites has resulted in any judicial finding that the City's custom (as alleged by Cantu) constituted an unofficial policy or custom.

*City, Tex.*, 233 F.3d 575, 2000 WL 1468838 (5th Cir. Sept. 8, 2000) (per curiam) (Table) (affirming Rule 12(b)(6) dismissal for failure to adequately plead municipal liability regarding custom). As a result, the City's motion to dismiss should be granted.

## V.   CONCLUSION

The City's motion to dismiss (D.E. 20) is GRANTED. The Court also GRANTS the City's Motion to Strike (D.E. 22) on the grounds that the challenged paragraphs relate to events irrelevant to this litigation.

ORDERED this 1st day of March, 2017.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE